# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NIKKI S. CARTER, et. al., | ) |
| *Plaintiffs*, | ) |
| v. | ) Case No. 1:25-cv-744-PLF |
| UNITED STATES DEPARTMENT OF EDUCATION, et. al, | ) |
| *Defendants*. | ) |

## DECLARATION OF DOE DECLARANT 8

Pursuant to 28 U.S.C. § 1746, I, Doe Declarant 8, declare as follows:

1. This declaration is submitted in support of Plaintiffs' Request for a Preliminary Injunction.

2. Until recently, I was a civil rights attorney with a still-open regional office of the Department of Education's Office for Civil Rights ("OCR"). I was with that regional office for nearly ten years and have worked under several administrations, both Democratic and Republican.

3. Through my personal knowledge and experience, as well as through documents and information I have reviewed, I have knowledge about OCR in general and my still-open regional office in particular.

4. OCR is charged with enforcing and investigating alleged violations of various federal civil rights laws that protect students and other individuals against discrimination, including Title VI of the Civil Rights Act of 1964 (Title VI), Title IX of the Education Amendments of 1972 (Title IX), Section 504 of the Rehabilitation Act of 1973 (Section 504), the

Age Discrimination Act of 1975 (Age Act), Title II of the Americans with Disabilities Act of 1990 (Title II), and the Boy Scouts of American Equal Access Act of 2002. OCR has a responsibility to act in a reasonably prompt manner in response to alleged violations of these laws.

5. In addition to its enforcement and investigative work, OCR also provides trainings and technical assistance on civil rights laws to state and local educational agencies. And it gives educational presentations to advocacy groups and parents.

6. The Assistant Secretary for Civil Rights leads OCR. OCR's headquarters are in Washington, D.C. Prior to March 11, 2025, it had 12 regional offices in Atlanta, Boston, Chicago, Cleveland, Dallas, Denver, Kansas City, New York, Philadelphia, San Francisco, Seattle, and Metro Washington D.C. The Deputy Assistant Secretary for Enforcement oversaw four Enforcement Divisions, each consisting of three regional locations. Each Enforcement Division was managed by an Enforcement Director, who was responsible for coordinating the program operations and resource management of three regional offices.

7. Investigative staff in the regional offices carry out OCR's mission by enforcing civil rights statutes and regulations. Staff use a variety of approaches to resolve complaint investigations and compliance reviews in order to ensure equal access to education for all students.

8. Like the other regional offices, my regional office receives complaints alleging civil rights violations, mostly from parents and advocates. Investigative staff review those complaints and decide if they have merit and should be fully investigated. While investigating a complaint, staff interview witnesses, request and review documents, and work with the complainant to understand the alleged discrimination.

9. As a civil rights attorney with OCR, I handled complaints from start to finish. I reviewed complaints to determine if they warranted a full investigation, investigated complaints,

negotiated resolutions, and monitored compliance with the resolutions. I worked on cases that alleged violations of federal law, including Title VI, Title IX, Section 504, the Age Act, and Title II. The majority of my caseload involved disability discrimination claims.

10. OCR has developed performance targets for obtaining results through efficient case management, in response to the Government Performance and Results Act (GPRA). To satisfy its GRPA targets, OCR must resolve 80% of complaints received within 180 days.

11. Shortly after President Trump's inauguration in January 2025, OCR investigations were paused completely. Although pauses are not completely abnormal during an administration change, this pause was unusual. We were instructed that we could not engage in any external communications related to our complaints or investigations. We could not request documents, conduct interviews, participate in meetings, facilitate mediations, negotiate resolutions, issue letters of findings, or take other necessary steps to review and resolve complaints. We could not even send out consent reminders – which is one of the first steps for initiating individual investigations. We did what we could to work our cases with whatever information we already had, but we could not progress anything. I had many cases in active investigation and resolution stages during this time, and complainants and school districts were reaching out to me for updates. But I could not respond to them.

12. Around this time, we also began losing staff pursuant to the administration's offers of voluntary separation for OCR and other government staff.

13. On February 20, 2025, the pause on investigations of disability discrimination claims was lifted. The pause on other investigations was lifted a few weeks later.

14. However, on March 11, 2025, there were mass terminations and office closures at OCR. The Boston, Chicago, Cleveland, Dallas, New York, Philadelphia, and San Francisco regional offices were eliminated.

15. My office inherited the docket from the one of the closed regional offices. As I understand it, staff in the closed regional office were cut off from the office network and their case and document management systems almost immediately. Any notes or documents on their desktops would have been lost. Although I was able to see documents related to the cases that we inherited in our case management system, I could not edit them. No one in my regional office could. We were informed that there was no plan in place to grant us actual access to the documents. And with the other regional office closed and staff without access to the network, we had no one to contact for more information. Without access to necessary information, inherited investigations have been unreasonably delayed. Some were likely near resolution, but that may not be possible now. Even several weeks after the closures, inherited cases still had not been reassigned within my office.

16. Prior to March 11, 2025, my caseload was over 50. My cases ranged from the initial stages of investigation to cases in the resolution monitoring phase. Others in my office also had caseloads of 50 or more.

17. Under that caseload, we did not consistently meet our performance targets under the Government Performance and Results Act ("GRPA") due to the complex number of complaints and significant number of cases. In my regional office, attorneys generally handle complaints completely from start to finish, without support from other staff. This takes time. Managing a docket of 50 cases is already difficult.

18. Now that my regional office is absorbing another regional office's docket because of the mass terminations and office closures, caseloads will be crushing and completely unmanageable. It will be impossible for the office to meet its performance targets under GPRA. And it will be impossible for my regional office to effectively address the cases that we absorbed from the now-closed regional office.

19. On top of the significantly increased docket in my regional office, other changes have also made the work unmanageable. For example, funding for travel has been cut off. Sometimes travel is essential for an investigation – for example, to meet witnesses in person, interview people with interpretation needs, or assess accessibility barriers. Being restricted from engaging in these activities impedes our ability to conduct effective investigations.

20. OCR's entire web team and translation interpretation team was also laid off. Additionally, OCR only has one Enforcement Director now, instead of the four that we used to have.

21. We are also unable to do the non-investigation work that we are supposed to do, like technical assistance. Technical assistance involves activities like community education and training for school districts. And historically, we try to return every call we get to provide the caller with guidance or information, but it would be very difficult for the office to keep doing that. As of the time that I left, we had not been provided with a plan for handling phone calls from the closed office that we inherited cases from.

22. Eliminating seven out of twelve regional offices effectively hamstrings OCR's ability to enforce federal civil rights law. The eliminated offices each served several different states and regions. And even before the offices were eliminated, we had already lost staff due to voluntary

resignations. Now, it will be nearly impossible for remaining staff to do meaningful work on their cases.

23. OCR cannot fulfill its statutorily mandated duties to investigate complaints and enforce civil rights laws in schools under these circumstances.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 29, 2025.

Signature:

*Doe Declarant 8*
_____

Doe Declarant 8