UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NIKKI S. CARTER, et. al., | ) |
| *Plaintiffs*, | ) |
| v. | ) Case No. 1:25-cv-744-PLF |
| UNITED STATES DEPARTMENT OF EDUCATION, et. al, | ) |
| *Defendants*. | ) |

**DECLARATION OF MELISSA COMBS**

Pursuant to 28 U.S.C. § 1746, I, Melissa Combs, declare as follows:

**Background Information**

1. I am over the age of eighteen, have personal knowledge of the facts and matters below, and am competent to testify.

2. I am the parent of D.P., who is 16 years old. We live in Connecticut.

3. D.P. is a sophomore in high school. They are a Plaintiff in this case.

4. D.P. experienced discrimination and harassment while attending a public school district that receives federal funding.

5. D.P. identifies as LGBTQ+.

6. On June 10, 2022, I filed a complaint with the U.S. Department of Education Office for Civil Rights ("OCR") on behalf of D.P. and other students alleging discrimination on the basis of gender and sexual identity in violation of Title IX.

**My OCR Complaint**

7. I filed my OCR complaint on behalf of D.P. and other LGBTQ+ students, against their public district ("district"). I filed the complaint after these students experienced repeated discrimination and harassment from classmates and school staff, targeting their gender/sexual identity, and the district failed to adequately address it.

8. One of the issues challenged in my complaint was the district's treatment of the students' Gender Sexuality Alliance ("GSA") club. In the fall of 2021, the school removed the GSA's posters at school and its slide in the morning announcements. Other club's slides and posters remained, though. The GSA club was also prohibited from continuing to meet during the school's "RISE period" – an academic support block meant to allow free time for students to engage in various extracurricular activities – despite that other clubs were allowed to use the RISE period to meet. The district refused to intervene to correct this discrimination. And later that year, the GSA's Google Classroom – which students used to share community events and resources and talk to one another – was replaced with a new GSA Google Classroom that did not allow students to post or comment. But other student groups were allowed to post and comment in their Google Classrooms.

9. The complaint also challenged the district's failure to address a pattern of harassment faced by the student-complainants throughout the 2021-2022 school year at the hands of other students and staff. A teacher at the middle school referred to LGBTQ+ identification as a "mental illness." Another middle school teacher informed her class that anyone participating in the National Day of Silence – an annual day of action meant to spread awareness about the effects of bullying and harassment of LGBTQ+ students – would not receive credit for that day's period. The teachers were not disciplined. Three of the student-

complainants – including D.P. – also endured homophobic and transphobic harassment from classmates. They were called slurs and told to "go die" or "go kill" themselves multiple times.

10. I, and the parents of the other involved students, reported the bullying/harassment to the district. Although the district opened Title IX investigations for D.P. and one other student, it took nearly ten months for the district to resolve the complaints. During that time, the district did not take meaningful steps to resolve the harassment, such as separating the student-complainants from their harassers. One of the student-complainants missed over a week of school to avoid their harasser. By the time the district resolved their complaint – in their favor – that student had already moved out of the district. The district ultimately found against D.P., but I did not appeal because it felt pointless. And by that time, OCR was already investigating the district, so I thought OCR would be able to hold them accountable. The district never opened a Title IX investigation for the third student.

11. Throughout the school year, the harassment continued to escalate. In March of 2022, a group of students entered a teacher's classroom, tore a PRIDE flag off the wall, brought the flag into the hallway, and repeatedly stomped on it while chanting "burn it." There were teachers and lunch monitors around, but only one tried to step in. And none of the teachers or lunch monitors reported the incident to the district. I reported it, but the district refused to open an investigation. And in June 2022, D.P. was assaulted by another student, who attempted to yank a PRIDE flag off D.P.'s neck in the school hallway. A teacher saw it and did nothing. D.P. initially did not report the incident, because they did not think the district would do anything about it. I reported it to the principal – who verified that the incident occurred from video footage – and although she promised to follow up with me, she never did. She did not take any steps to address it, either.

3

12. On June 10, 2022, I filed a complaint with OCR alleging that the district had engaged in discrimination on the basis of gender/sexual identity, in violation of Title IX. I requested individual and district-wide relief, including compensatory education for students who missed instructional time as a result of the discrimination, expert review of the district's policies, guidelines, and regulations affecting LGBTQ+ students, funding and staffing for diversity, equity, and inclusion and inclusive curriculum initiatives to benefit LGBTQ+ students in the district, trainings for district staff, and review of the district's bullying and safe school climate plan.

13. I knew about OCR through my experiences advocating for my child. In Connecticut, there is an option for filing civil rights complaints through the Commission on Human Rights and Opportunities, but I chose to seek help from OCR because I wanted the weight of the federal government behind my claim. I hoped that OCR opening an investigation would incentivize the district to do better by these children. I also wanted to see changes for other students in the district, too. I felt that an OCR complaint was the best avenue to affect wider change.

14. Through my OCR complaint, I was hoping to achieve a safe learning environment for my child and other LGBTQ+ students in the district. I wanted my child to feel safe and included in their local public school, be able to meaningfully participate in the GSA, and be able to learn free of harassment and bullying.

**OCR's Response to My Complaint**

15. My complaint was assigned to the Boston regional office. On June 30, 2022, I received an email from an OCR investigator, setting up an interview in July. At the interview, we talked for an hour and forty-five minutes about my complaint. And on August 10, 2022,

4

OCR notified me that it was opening an investigation into my Title IX claims – in particular, whether the district engaged in different treatment on the basis of sex in its treatment of the GSA, and whether the district failed to adequately respond to complaints of sex-based harassment.

16. After that, I maintained regular contact with the OCR investigator, and she provided me with the process manuals and information about the investigation process. At the end of August, she provided me with process manuals and information about the investigation process.

17. On or around March 11, 2025, I heard on the news that OCR was laying off staff and that the Boston regional office would close. On March 13, 2025, I sent an email to my assigned investigator asking that she advise me on the next steps in light of the closure. But I never heard back. I have not heard anything from anyone else at OCR and have no idea if the case has been reassigned.

18. My understanding is that since the closure of the Boston regional office, there has not been any progress on investigating my OCR complaint.

**Impact on My Family**

19. After I filed the OCR complaint, my child continued to experience discrimination, bullying, and harassment from students and staff at school. School was a dangerous place for D.P. – they were constantly in fight or flight mode. Because of the ongoing discrimination and harassment, D.P.'s mental health deteriorated significantly, and they experienced serious self-harm. D.P. also missed a significant amount of learning time because of fear-based absences. For a while, I could not leave D.P. alone because I was so concerned about self-harm. This affected my employment.

20.     D.P. now attends a magnet school outside of the district because of the ongoing discrimination they experienced there. I felt this move was necessary to protect D.P.'s mental and emotional health and their access to education. But if the district would correct the discrimination, I would send them back. I want D.P. to be able to attend their local public school.

21.     It only took us around fifteen minutes to get to D.P.'s regular school, but it takes anywhere from twenty-five to forty minutes to get to the magnet school. If D.P. wants to stay at school for an extracurricular activity or tutoring, I have to pick them up during rush hour, and the commute is difficult.

22.     At the magnet school, D.P. also lacks the same access to extracurricular and social opportunities that they used to have. The magnet school only has five or six clubs – but D.P.'s regular public school has over fifty. D.P. would like to be in a theater club, but their magnet school does not have one. D.P.'s social opportunities are also much more limited because of the commute. Their friends do not live in our community, so even something as simple as going to a friend's house requires a lot of coordination and time. Even going to a school football game is a huge commitment.

23.     Although things are better at the magnet school, D.P. still struggles with their mental health. The learning loss that they experienced because of the discrimination and harassment in the district also continues to impact them. D.P. has a lot of academic stress, which led to one self-harm incident in high school. D.P. also has an Individualized Education Program ("IEP") now, because of the learning loss in the district and their mental health issues. Their experiences still affect them socially, too. D.P. has a lot of anxiety around adults and has a hard time participating in social events with other students from the district because of the

trauma they experienced there. They take medication and have attended therapy throughout and since middle school.

24.     If my OCR complaint is never resolved, D.P. will continue to lack access to their regular public school, because the district is still engaging in the same discriminatory conduct. They will lack access to meaningful extracurricular activities, social opportunities, and a sense of belonging in their local community. And D.P. will suffer additional emotional harm if the district is never held accountable. It is important for them to hear from an official authority that what happened to them was unjust. D.P. is also concerned about the other LGTBQ+ students that still attend school in the district. One of the student-complainants from my complaint still goes to school there, and without relief from OCR, they will continue to suffer harassment and discrimination.

25.     If my OCR complaint was resolved favorably, D.P. would be able to safely return to their regular public school in the district. They would have a chance to participate in the theater club, would have more social opportunities, and would have a greater sense of belonging in their community. I really want them to be able to go to their local school.

26.     Without access to OCR's complaint processing system, my family and I have no other option to try and have our discrimination and harassment complaint addressed. We do not have the resources for litigation. And we do not want money – we just want the district to be better. I can no longer bring my complaint with CHRO, because complainants only have 180 days from the discrimination to file with CHRO, and that deadline has passed. I have emailed CHRO to seek a waiver of the deadline for students with pending OCR complaints, but I have not heard back. Without OCR, we will be left without relief.

7

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 29, 2025.

Signature:

_____
Melissa Combs (Apr 29, 2025 21:03 EDT)

Melissa Combs

**Signature:** _____
Melissa Combs (Apr 29, 2025 21:03 EDT)

**Email:** mc@outaccountabilityproject.org