# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLUMBIA

|  |  |
|---|---|
| NIKKI S. CARTER, et. al., | ) |
| *Plaintiffs*, | ) |
| v. | ) Case No. 1:25-cv-744-PLF |
| UNITED STATES DEPARTMENT OF EDUCATION, et. al, | ) |
| *Defendants*. | ) |

## DECLARATION OF AMY CUPP

I, Amy Cupp, declare as follows:

**Background Information**

1. I am over the age of eighteen, have personal knowledge of the facts and matters below, and am competent to testify about these facts.

2. I am the parent of G.C., who is 12 years old. We live in Indiana.

3. My child, G.C., and I are Plaintiffs in this case.

4. My child is in the sixth grade.

5. I am a member of the Council of Parent Attorneys and Advocates, Inc.

6. My child has several identified disabilities. My child receives services at school pursuant to an Individualized Education Program (IEP).

7. I filed a complaint with the U.S. Department of Education Office for Civil Rights (OCR) on behalf of my child on December 6, 2024, alleging discrimination on the basis of disability.

**My OCR Complaint**

8. Since starting sixth grade at Norwell Middle School, my daughter has been subjected to multiple incidents of restraint and seclusion.

9. Most of these incidents were poorly documented. Some of the emails and incident reports I received show that staff members often restrained and secluded my daughter for behaviors such as attempting to leave the room, verbally refusing to follow school staff's commands, throwing things, or having a tantrum and lying on the floor.

10. I also noticed that, on several occasions, the school would change my daughter's IEP after our case conference. I reached out to Indiana Disability Rights (IDR) to have them join my case conference in October 2024 to help implement my daughter's IEP and update her behavior plan. The school called me to ask who was coming to the case conference, and I told them the IDR attorney's name. Two hours after the school found out that IDR would be joining the case conference, I received several messages from the superintendent. The superintendent told me that my daughter was not allowed to take an alternative route on the school bus or ride with the elementary students, even in the case of an emergency. I was confused by the messages because it seemed to come out of nowhere. The superintendent also canceled the breakfast that he wanted to have with my husband and me the following week.

11. On November 11, 2024, my daughter was restrained by four staff, one of whom was a wrestling coach and another who was a football coach. My daughter sustained bruising on her upper arm as a result of the restraint.

12. My daughter's therapist found the bruising and reported it to the Department of Child Services (DCS). The DCS worker reported it to the state police.

13. The state police did a brief investigation, and the officer told me that he did not find criminal intent.

14. I contacted my advocate at IN*SOURCE, an Indiana non-profit, IDR, and Ability Allies, and they all could not help me with the issue of restraint and seclusion. I asked my advocate at IN*SOURCE, who sits on the state's restraint and seclusion committee, what I could do to resolve this issue at the state level, and she told me that there was nothing I could do. She told me that even if I made a complaint to the Indiana Department of Education (IDOE), they would just send it along to OCR.

15. I could not stand by and let school staff continue to hurt my daughter.

16. On December 6, 2024, I called the OCR Chicago regional office and left a message asking if they could help me. That same night, an OCR staff called me back, told me that I had called the right place, and she encouraged me to submit a complaint via the online portal.

17. After the call with the OCR staff, I filled out the online complaint form.

18. In filing the complaint, I hoped that OCR would require the school district to provide training on the appropriate use of restraint and seclusion and monitor the school district for compliance.

19. In this school year alone, I estimate that my daughter has been restrained 15 times and secluded 14 times, for a total of 23 hours and 6 minutes.

20. On December 17, 2024, I had a phone call with the special education director where we had a verbal agreement that she would remove the "good-faith" clause from my daughter's IEP. The good faith clause would allow the school to remove my daughter from school if behavioral interventions were unsuccessful after 90 minutes without counting it as a suspension.

21. On December 19, 2024, I found out the school did not remove the good faith clause in my daughter's IEP but instead filed a complaint against me with IDOE for refusing to sign an IEP with the clause in it. The complaint against me also stated that I called DCS on the school.

22. In January 2025, I went to mediation with the school district for the complaint they filed against me. At mediation, the school district agreed to remove the "good faith" clause from my daughter's IEP.

**OCR's Response to My Complaint**

23. My complaint was assigned to the Chicago regional office.

24. On December 10, 2024, an OCR attorney reached out to me to schedule a teleconference to get more information from me.

25. After my call with the OCR attorney, I continued to provide her with more information on my daughter's restraint and seclusion and told her that the school district filed a complaint against me, and I had to go to mediation.

26. On January 14, 2025, I received an email from the OCR attorney stating that she met with her supervisor, and they were going to open my case. In the email, the OCR attorney also told me that I should receive an official notification letter soon.

27. I waited and checked my mail every day for the letter, but it did not come.

28. On February 28, I sent an email to the OCR attorney asking if she was able to talk to families again after the pause on investigations.

29. On March 10, 2025, the OCR attorney responded to my email asking to schedule a time to talk about my case.

30. On March 11, 2025, I had a call with the OCR attorney where she told me that she had drafted the opening letter for my case and that it was ready to go. However, it needed to be approved by headquarters before it could be sent out. The OCR attorney told me that it would be another week before I received the case opening letter.

31. After this call, I learned about OCR's mass layoffs and office closures.

32. On March 12, I emailed the OCR attorney asking if she was still working. That evening, I got a call from the OCR attorney stating that she and her whole office were laid off and she could not respond to my email, so she had to dig to find my number to contact me. The OCR attorney told me that my case was in the system, but that she didn't know what was going to happen to my case.

33. A news article about my OCR complaint and this lawsuit was published on National Public Radio (NPR) on April 16, 2025.

34. A news article about my OCR complaint and this lawsuit was published on USA Today on April 23, 2025.

35. On the afternoon of April 23, 2025, I finally received an email from an investigator in the Denver regional office. The email had my opening letter for my OCR complaint attached.

36. The letter states that OCR will investigate my complaint.

**Impact on My Family**

37. The fact that my OCR complaint has not been resolved has had a big impact on my family.

38. I was scared to send my daughter to school because I didn't know what was going to happen to my daughter, wondering if the staff was going to hurt or harass my daughter that day.

39. I was afraid that school staff would continue to restrain and seclude my daughter, so I shortened her school day to protect her and limit her exposure to more restraint and seclusion.

40. Since February 24, 2025, my daughter has been going to ABA therapy in the morning and only attending her school for two hours each day in the afternoon.

41. My daughter used to love school but now tells me that she doesn't like to go very much because she is afraid of being put in the "blue room," which is the padded room used for seclusion.

42. My daughter tells me she would like to go back to school more and to be with her friends, but only if she is not kept in the blue room.

43. I feel sad and upset that my daughter is missing out on a lot of the school day and education time, but I have to protect my daughter from the harm caused by her school.

44. OCR gave me hope when I had nowhere else to turn in my state. That sense of hope diminished when I heard about the OCR investigation pause and subsequent mass termination and office closures.

45. I do not know how much longer it will take to resolve my complaint because I understand many of the investigators have many cases to handle due to recent layoffs.

46. I hope that OCR will investigate and resolve my complaint so I can send my daughter back to school full-time in a safer environment.

47. Without access to OCR's complaint processing system, my family and I have no other option to try and have our discrimination complaint addressed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 30, 2025.

Signature:

_____
A.C.