# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF COLUMBIA

| | |
|---|---|
| NIKKI S. CARTER, et. al., | ) |
| *Plaintiffs*, | ) |
| v. | ) Case No. 1:25-cv-744-PLF |
| UNITED STATES DEPARTMENT OF EDUCATION, et. al, | ) |
| *Defendants*. | ) |

## DECLARATION OF NIKKI S. CARTER

I, Nikki Carter, declare as follows:

**Background Information**

1. I am over the age of eighteen, have personal knowledge of the facts and matters below, and am competent to testify about these facts.

2. I am a Plaintiff in this case.

3. I live in Demopolis, Alabama.

4. I have three children. My two daughters currently attend Demopolis High School in Demopolis City School District.

5. I am a Black community activist and advocate.

6. I am a member of the Council of Parent Attorneys and Advocates, Inc.

1

**Community Advocacy**

7. Through my company—Champion Initiative, LLC—I provide non-legal navigational and educational resources and services for victims of crime, injustice, and discrimination, including disability discrimination.

8. As an advocate, I have helped parents identify, expose, and address a consistent pattern of discriminatory practices by Demopolis City School District. I have referred numerous parents to my state's Protection & Advocacy organization (the Alabama Disability Advocacy Program) and other legal organizations in Alabama, and have helped bring media attention to the district's discriminatory practices.

9. I have also hosted numerous events and workshops focused on providing resources and education to parents of children facing race and disability discrimination in the public education system.

10. On May 12, 2022, I hosted a free public event called "Right to Resources" to inform parents about the resources available to them to overcome various barriers in Alabama's public education system.

11. The event featured panelists from the Southern Poverty Law Center (SPLC), Legal Services Alabama, and Alabama Disability Advocacy Program.

12. The Superintendent and Special Education Coordinator of Demopolis City School District attended the event.

13. Local news reporters from Al.com and the Demopolis Times were also in attendance.

14. Following the event, I connected many of the parent attendees to one of the reporters to allow them to share their concerns with Demopolis City School District with the media.

15. On August 4, 2022, I jointly hosted a workshop with SPLC titled "Children First Community Workshop: Navigating Educational Rights and School Services." The purpose of the workshop was to determine and address the needs of parents with children experiencing barriers to educational success.

16. The workshop primarily targeted minorities, low-income families, families with children with mental or physical disabilities, and families with limited educational history.

17. After the August 4th workshop, I learned from a former teacher and others in the community that administrators at Demopolis City School District were upset about my activism and advocacy. They did not like that I was educating the community and bringing in attorneys to disrupt the status quo.

18. In September 2022, I faced retaliation from Demopolis City School District for my advocacy on behalf of children of color and children with disabilities.

**Circumstances Underlying OCR Complaint**

19. On September 16, 2022, I attended an away high school football game to support my daughter who, at the time, was captain of Demopolis High School's dance-line.

20. The dance-line is part of Demopolis High School's Marching Band Auxiliary.

21. During the game, a white parent of another student on the high school's Marching Band Auxiliary wanted to talk to the team's assistant sponsor, sponsor, and Band Director to discuss her daughter being unfairly treated on the team, in violation of the team's policies and procedures. I accompanied the parent to support her.

22. We approached the sponsor, assistant sponsor, and Band Director.

23. During the conversation, I told the sponsor and Band Director that if team policies and procedures continued to be violated, I would contact the district superintendent.

3

24. As I stepped away to talk to the assistant sponsor separately, the assistant sponsor began chastising me because she was upset that I had voiced my concerns.

25. I told her that I was not interested in continuing the conversation and that I wanted to be left alone. But as I turned to leave the conversation, the assistant sponsor began following me.

26. Despite my numerous efforts to extricate myself from the conversation, the assistant sponsor continued to follow me to antagonize and provoke me.

27. Other staff members who were present did nothing to intervene.

28. I was distressed. Though the white parent and I approached the sponsor, assistant sponsor, and Band Director together, I was the only one subject to antagonism.

29. On September 23, 2022, I went to the Demopolis Police Department to meet the Chief of Police for work I was doing as part of my advocacy in a surrounding county.

30. During that visit, the Chief notified me that the Principal of Demopolis High School had issued a trespass order against me as a result of the incident that happened on September 16, 2022. The trespass order banned me from the high school and all high school-sponsored events.

31. I was shocked.

32. Five days later, on September 28, 2022, the Superintendent of Demopolis City School District had a second trespass order issued against me, this time banning me from the Demopolis Board of Education and all Demopolis City School District property.

33. I believe I was subjected to differential treatment because of my race and as retaliation for my advocacy on behalf of children of color and children with disabilities.

34. Through an Open Records Act request filed by a reporter at Al.com, I found out that most of the individuals who were subjected to trespass orders issued by Demopolis City School District in the previous five years were Black.

35. I was also the only one to receive a trespass order banning access to all Demopolis Board of Education and Demopolis City School District events and premises.

36. Additionally, I learned that a white parent of a band student got into an altercation with the Band Director and threatened to put the Band Director in a "f***ing wheelchair." This parent also had to be escorted out of several school football games by the Demopolis Police Department. But this parent was never issued any trespass orders.

37. As a result of the two trespass orders, I was not allowed to drop off or pick up my children at school, deliver them medications, sign them out of school when sick, go to any school-related events, participate in any in-person school meetings, or even attend any public-school board meetings.

38. The trespass orders not only interfered with my ability to be fully engaged with my children's education, but they also obstructed my ability to do advocacy work on behalf of children and families within Demopolis City School District.

39. Because of the trespass orders, I was prohibited from participating in-person as an advocate in any IEP meetings, parent-teacher meetings, or meetings with school administrators.

**OCR Complaint**

40. On September 23, 2022, I filed a complaint with the U.S. Department of Education Office for Civil Rights (OCR) against Demopolis City School District on behalf of

myself, alleging race-based discrimination in violation of Title VI, and retaliation in violation of Section 504.

41. I filed an OCR complaint because I wanted to bring attention to Demopolis City School District's discriminatory and retaliatory practices.

42. I live in a state where getting legal representation is an uphill battle. No attorney I contacted was willing to take on the district.

43. By filing an OCR complaint, I thought I would be able to get justice not only for myself, but also for all the other families who were victims of the district's discriminatory practices, and who could not find or afford legal representation.

44. As part of the relief I requested, I wanted OCR to do a full investigation into Demopolis City School District and its discriminatory practices—including its disproportionate issuance of trespass orders to Black individuals.

45. I further requested that the Demopolis City School Board and Superintendent be required to create policies and procedures that would address and rectify these discriminatory practices.

46. Finally, I wanted the district to lift my trespass orders so that I could participate in my children's education and school life, and continue my advocacy for children in Demopolis.

47. At the time, I believed OCR would be my best shot at advocating for myself and others who had been discriminated against by the district.

**OCR's Response to My Complaint**

48. My complaint was assigned to the Atlanta office.

49. On December 5, 2022, less than three months after I filed my complaint, OCR notified me that my case was being opened for investigation.

50. OCR specifically stated that it would investigate the following issues: (1) whether Demopolis City School District subjected me and other Black parents to differential treatment based on race, in violation of Title VI; and (2) whether Demopolis City School District retaliated against me, in violation of Section 504.

51. In February 2023, the OCR investigative attorney assigned to my case notified me that OCR was conducting interviews with district staff and preparing a findings report.

52. In April 2023, the OCR investigative attorney notified me that they were working with the district to draft a voluntary resolution agreement.

53. In May 2023, as a result of OCR's intervention, the district granted me a one-day exception to the trespass orders to allow me to attend my son's high school graduation.

54. On August 8, 2024, the Interim Superintendent of Demopolis City School District sent a letter to the Chief of Police at the Demopolis Police Department, indicating that my trespass orders had expired, and that I was now allowed back on district property.

55. Unfortunately, since Inauguration Day, there has been no progress on my investigation.

56. My understanding is that since OCR's mass termination, the investigation into my OCR complaint has been put on pause.

**Impact of OCR's Decimation**

57. I believe the decimation of OCR's workforce makes it less likely that my complaint will be processed promptly or equitably.

58. I am scared that if OCR stops investigating my complaint, I will be subject to further trespass orders and retaliation.

59. Though the district lifted my two trespass orders, without OCR, there is nothing stopping Demopolis City School District from issuing additional trespass orders in response to my advocacy and activism.

60. Because of the trespass orders, I almost missed my son's high school graduation.

61. Additionally, I was forced to sit out on many important school events for my children, including award ceremonies, my youngest daughter's eighth-grade graduation, and my older daughter's dance-line performances.

62. I want to be present in my children's education and school life.

63. My two daughters are still students in Demopolis City School District.

64. If I am subject to additional trespass orders, I may be unable to participate in their education and school life.

65. The fear of additional trespass orders and retaliation has also chilled my advocacy and activism on behalf of other students and families in my district.

66. Demopolis City School District made me a target for fighting and advocating on behalf of children with disabilities.

67. I should not be put in a position where my job as an advocate threatens my ability to participate as a parent in my children's education.

68. But without OCR's continued investigation of my case, I am scared that my advocacy will prevent me from being able to fully engage in my daughters' education and will leave me subject to further discrimination and retaliation.

69. Further, the harm caused by OCR's failure to promptly and equitably process my investigation not only affects me and my children, but also all the other children I would otherwise advocate for. This means, for example, that other students will likely be denied

     the accommodations they need to fully participate in a school's programs and activities under Section 504.

70. Without OCR's continued investigation of my case, I am left without meaningful recourse if I am again subject to retaliation or discrimination by the district.

71. It is critically important that OCR's complaint processing and investigation capacity be restored immediately so that I can again advocate for the many children with disabilities in Demopolis who are unable to access an equal public education.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 29, 2025.

Signature

_/s/ Nikki S. Carter_

Nikki S. Carter