IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| NIKKI S. CARTER, et. al., | ) ) ) | |
| *Plaintiffs*, | ) | Case No. 1:25-cv-744-PLF |
| v. | ) | |
| UNITED STATES DEPARTMENT OF EDUCATION, et. al, | ) ) ) ) | |
| *Defendants*. | | |

**DECLARATION OF DENISE MARSHALL IN SUPPORT OF PLAINTIFFS'**

**MOTION FOR PRELIMINARY INJUNCTION**

i

I, DENISE MARSHALL, declare as follows:

1. This declaration is based on my personal knowledge. If called to testify in this case, I would testify competently about these facts.

2. I am the Chief Executive Officer (CEO) of the Council of Parent Attorneys and Advocates, Inc. (COPAA), a national not-for-profit organization of parents of children with disabilities, their attorneys, and their advocates. I have been the CEO of COPAA for 20 years.

3. I am familiar with our training programs, including how our programs train and advise members around accessing protections of students' rights through the United States Department of Education (Department). I am familiar with many of the concerns of our membership. I am familiar with COPAA's activities and operations and am authorized to speak on its behalf.

**COPAA's mission and activities**

4. COPAA's mission is to protect and enforce the legal and civil rights of students with disabilities and their families. COPAA's primary goal is to secure appropriate educational services for children with disabilities in accordance with federal laws. As part of this mission, COPAA seeks to protect the rights of children with disabilities to be free from discrimination based on their disability, race, sex, sexual orientation, and gender identity, and to receive a free appropriate public education.

5. COPAA has more than 3,600 members located across the United States. Membership is open to all persons who are interested in furthering COPAA's purposes, and members pay annual dues as required by COPAA. Persons who work for, or contract with, state, regional, or local education agencies (e.g., state Departments of Education or school districts), however, are presumptively not permitted to join COPAA, but a super–majority of the Board of Directors may

permit such persons to join as members after an interview and other varied requirements. The Board of Directors is composed exclusively of COPAA members.

6.      In its daily operations, COPAA accomplishes our mission by, among other activities, providing resources, training, and information to members to assist them in obtaining a free appropriate public education and equal educational opportunity for children with disabilities; helping parents and advocates file administrative complaints; helping parents and advocates find attorneys and legal resources as they advocate for their children's legal rights; educating the public and policymakers, including federal agencies, about the experiences of children with disabilities and their families; and educating COPAA members about developments in the federal civil rights laws and policies affecting the education of children with disabilities. COPAA frequently advises, trains, and assists parents, attorneys, and advocates filing complaints with the Department's Office for Civil Rights (OCR).

7.      In conducting these activities to fulfill our mission, including our public education activities, COPAA relies on public information and research we collect about what school districts are under OCR investigation for systemic violations or individual violations with regard to disability, disability and race, and disability and sex or gender, including how school districts respond to the OCR investigations including revising policies, practices, and procedures and spending their IDEA funds on comprehensive coordinated early intervention services.

8.      COPAA has active members nationwide. As parents, advocates, and attorneys for students with disabilities, COPAA's members rely on the Department to enforce the rights of students with disabilities to receive an education free from discrimination. COPAA's members have filed pending OCR complaints concerning discrimination on the basis of disability,

including complaints alleging both disability-based and race- and/or sex-based discrimination in schools.

9. COPAA educates our members about developments in federal law and policies affecting children with disabilities by maintaining an extensive resource library that includes webinars, an annual conference, and other information available to members and non-members.

10. One of COPAA's practices and on-going functions is to speak with and advise our members on how to enforce the rights of students with disabilities. Historically, filing a complaint with OCR was an important option for many parents, advocates and attorneys. To support members in filing these complaints, COPAA has developed training and educational materials over the years related to how to file a complaint, how the administrative complaint process works, and more. For our well-attended annual conferences, we have invited speakers from OCR and the Department, and others from the United States Department of Justice, who have spoken in past years to COPAA and hundreds of our members about federal administrative complaint and dispute resolution practices and procedures. They have participated on panels on just these issues, explaining the complaint process to our members and conference attendees.

**Impact of OCR office closures on COPAA and its members**

11. Now that the Department has closed offices and decimated the OCR workforce, COPAA must rewrite many of our manuals, update our trainings, and retrain many of our members. We have to alter our recommendations and prior training and advice on the availability and efficacy of using these complaints. This will take a great deal of time, money, and effort – time, money, and effort that could instead be spent working to ensure access to education for children with disabilities. It will alter our objectives in training and topics for our annual conference. Already, our staff is spending time educating members on the new process.

12. In addition, our staff will need to update materials and provide additional advice to members on non-OCR paths for enforcing student rights. These trainings and materials will necessarily involve litigation if the OCR complaint process is foreclosed. Unfortunately, removing OCR complaint processes from the range of effective advocacy tools, or restricting them, significantly burdens this process of training, responses and protections.

13. The impact of this change is to severely limit, if not entirely eliminate, OCR complaints as a viable means to resolve violations of established federal law alleged by COPAA members. This means that parents without the means to hire and pay attorneys will not pursue *bona fide* administrative complaints to restore federally protected rights to children. For others who bear the costs and length of litigation, they will have much more limited remedies. Already, this is happening where parents contacting COPAA are foregoing the federal OCR complaint process.

14. In addition, in the absence of OCR accepting and reviewing the merits of complaints and offering meaningful remedies, an important protective provision that has historically altered the behavior of school districts is removed with the potential consequences of limiting children's protections. The absence of OCR complaint and investigation procedures will also increase the need to use administrative due process complaints, for students eligible to do so, to secure contested remedies for students, but that option may not be available for many students and families because of the nature of their complaints that do not involve due process claims.

15. The Department's actions have made achieving COPAA's mission to ensure equal access to education more difficult, time- consuming, and resource-intensive. Because of Defendants' obstruction of OCR's complaint investigation and processing functions, COPAA has expended time and resources we would have devoted to advocating on behalf of students with disabilities

to responding to calls and emails from members about Defendants' actions, as well as addressing inquiries about, tracking, and analyzing the impact of Defendants' actions on our members' pending complaints.

16.  As a result of the dismantling of the OCR offices around the United States, COPAA has also been forced to expend resources updating our training materials, retraining our members on alternative and state complaint processes, and altering our recommendations and advice on the likely efficacy of an OCR complaint, which has required additional expenditures from COPAA staff and diverted our resources from direct assistance to members.

17.  COPAA has expended time and resources that we otherwise could have dedicated to our efforts to secure equal access to education.

18.  Additionally, COPAA periodically submits comments on federal agencies' proposed rules and regulations to inform agencies about the impact of such proposals on the lives and rights of children with disabilities and their families. However, the Department failed to issue public notices for any proposed actions, rules, or regulations related to the office closures and reductions so we were unable to notify the Department or OCR of our reliance interests at stake.

19.  COPAA has active members with pending OCR complaints.  COPAA's membership includes parents, attorneys, and advocates who have stalled pending OCR complaints.

20.  As a result of first the freeze in investigations and now the decimation of OCR's workforce, COPAA's mission to provide resources and training and to assist our members in obtaining a free appropriate public education and equal educational opportunity for children with disabilities has been significantly frustrated.  To address our frustrated mission, COPAA has been forced to divert our resources and time to addressing concerns from our members about Defendants' actions and tracking the impact of those actions on COPAA members.

21. COPAA has had to update our training materials for our twelve-week online training course for new attorneys, our materials for our two-day in-person skills training for new attorneys, and our member webinars on Section 504. COPAA also had to add information regarding closed OCR offices and information on filing state complaints in lieu of OCR complaints to our Special Education Advocacy Training (SEAT) curriculum.

22. The closing of the OCR offices hampers COPAA's mission by reducing the amount of information available to COPAA and our members for these and other tasks.

23. The closing of the OCR offices has already impaired and will continue to impair COPAA's ability to bring potential Section 504 violations to the attention of the Department and to continue to educate the public about disability-based discrimination and possible remedies.

24. As a result of the Department's actions delaying or freezing investigations, COPAA is now required to expend resources to support our members in obtaining information about pending investigations and complaints, and alternative remedies, through research, and public records requests. But for the Department's actions, COPAA would not need to undertake such extensive efforts.

25. COPAA does not have the staff resources currently to conduct this work and would have to reallocate 10 hours a week of the Legal Director time ($39,000 a year); 5% of Executive Director time per month ($9,993 a year); and other direct and indirect costs for website updates, changes to curriculum and other staff time ($7,640 a year). That is a total of $56, 633 that is not currently budgeted.

26. COPAA has active parent members who have pending OCR complaints on behalf of their children with disabilities and active advocate and attorney members who work with families with pending OCR complaints, including Nikki Carter, Melissa Combs and Amy Cupp.

27. Those parents, and I believe other COPAA members, have lost important practical services that would have flowed from an investigation into their allegations of discrimination.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 30, 2025.

Respectfully submitted,

_____

Denise S. Marshall